FILED - KZ
September 2, 2022 1:18 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
mg  Scanned by mg / 9/2/22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

1:22-cv-808
Paul L. Maloney
U.S. District Judge

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 1:18-CR-167

v.

Hon. Paul L. Maloney
U.S. District Court Judge

HOWARD ANTHONY MAYFIELD,

Defendant.

---

**MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR 28 U.S.C. §2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

---

COMES NOW Howard Anthony Mayfield, the petitioner, pro se, and respectfully moves this Honorable Court pursuant to title 28 U.S.C. United States Code, Section 2255 to: Vacate, set Aside or Correct Sentence imposed by this Honorable Court on February 13, 2020. The Petitioner filed a timely notice of appeal, and appellate counsel filed a Direct Appeal on or about September 8, 2020, Case No. 20-1169. The Court of Appeals affirmed the Petitioner's conviction in September, 2021.

IN SUPPORT THE PETITIONER STATES AS FOLLOWS:

STATEMENT OF THE CASE

On May 24, 2018, Petitioner Mayfield was named in an indictment charging the Petitioner with; One Count of Conspiracy to Posses with Intent to Distribute over Five Kilograms of Cocaine in violation of 21 U.S.C. Section 846, and Four Counts of Possession with the intent to and/or Distribution of Cocaine, in violation of 21 U.S.C. Section 841.

Petitioner Mayfield entered into a Rule 11(c)(1)(A) plea agreement on June 19, 2019. Petitioner Mayfield agreed to plead guilty to Count One of the indictment, which charged a Conspiracy to possess with the Intent

1.

to Distribute Five Kilograms or more of Cocaine. As part of the plea agreement, the government agreed to dismiss the other Counts of the indictment, dismissing the 21 U.S.C. Section 851 enhancement notification previously filed, and to consider a " reduction in sentence based upon many discussion with counsel Graham and the government based on cooperation.

The Plea agreement also contained an appellate waiver provision, where by the Petitioner agreed to waive his right to appeal the sentence and/or conviction except in these circumstances: the Petitioner's sentence on any count of conviction exceeded the statutory maximum; the sentence was based on an " unconstitutional " factor such as religion or gender; the District Court incorrectly determined the Guidelines, the guilty plea was involuntary or unknowing; or a claim of ineffective assistance of counsel. (R. 702, Plea Agreement, Pg. I.D. 3729) The plea was taken before a Magistrate Judge on June 20, 2019.

On June 21, 2019, the day after the plea, Petitioner Mayfield wrote a letter to the District Court, indicating that he wanted to withdraw his plea agreement. (R. 716, Letter, Pg. I.D. # 3901) The Petitioner informed the Court he had been " misled " on may issues by his counsel Graham, and never reviewed the agreement with counsel prior to signing. Petitioner Mayfield stated there was " erroneous " and misleading information, in the Statement of the facts, and he refused to " falsely testify " against others. Furthermore, conversations with counsel Graham that were also misleading, and never received answers to the questions he asked.

The Court held a hearing on this motion on June 27, 2019. During that hearing, the Petitioner stated that he had discussions with counsel graham and wished counsel to remain on his case. (R. 724, hearing Pg. I.D. #3927)

It should be noted, that the discussions between counsel Graham and the Petitioner focused on a " reduction " of sentence for cooperation with the government, based on many previous conversation with counsel Graham and the government.

The Petitioner informed the Court he did not wish to withdraw his plea (R. 724, Hearing pg. I.D. # 3928); and that he was reaffirming the Statement of the Facts contained in his plea. (R. 724, Hearing, Pg. I.D. # 2930)

The plea was taken before a magistrate Judge on June 20, 2019. Sentencing occurred on February 13, 2020, which Petitioner Mayfield was sentenced to 360 months, to be followed by five years of supervised release.

STANDARD OF REVIEW
Sixth Amendment of the United States Constitution Violation

Claims of ineffective assistance of counsel in criminal cases are evaluated under a two-prong test set forth in STRICKLAND -v- WASHINGTON, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064-74, 80 L.Ed. 2d. 674 (1984) and its progeny. " To succeed on any claim of ineffective assistance of counsel, a Petitioner must show that:

> (1) The attorney's representation fell below an objective standard of reasonableness, and;
>
> (2) There is a reasonable probability that except for the attorney's unprofessional errors, the results of the proceedings would have been different.

In a plea bargaining context, a Petitioner seeking to establish ineffective assistance of counsel, must demonstrate that:

> (1) Counsel's advise and performance fell below an objective standard or reasonableness; and:
>
> (2) The Petitioner would not have plead guilty, and would have insisted on going to trial in the absence of his attorney's errors- See, HILL -v- LOCKHART, 474 U.S.. 52, 58-59, 106 S. Ct. 366, 370-71, 88 L. Ed 2d. 203 (1985)

In HILL, 474 U.S. at 59, the Court explained that; In many guilty plea cases, the " PREJUDICE " inquiry would closely resemble the inquiry engaged in by Courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example: where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, or promises made, the determination whether the error " PREJUDICED " the Petitioner by causing him to plead guilty rather than going to trial, will depend on the likihood that discovery of the evidence or promises would have led counsel to change his recommendation as to the plea.

This assessment, in turn, will depend in large part on a prediction whether the evidence, or promises likely would have have changed the outcome of a trial setting. Similarly, while the alleged error of counsel is a failure to advise the Petitioner of a potential affirmative defense to the crime charged, the resolution of the " PREJUDICE " inquiry will depend largely on whether the affirmative defense would have succeeded at trial. I.D.

In the case at hand, trial counsel Scott Graham committed several errors and omissions which amounted to performance at a level below the acceptable objective standard of reasonableness for a defense counsel in a criminal case.

3.

## ISSUE ONE

## THE CONVICTION IS UNCONSTITUTIONAL BECAUSE PETITIONER DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENT'S OF THE UNITED STATES CONSTITUTION

MAINTAINING A PREMISES FOR DRUG DISTRIBUTION:

The Petitioner's Counsel Scott Graham failed to object to the two-level enhancement for the Petitioner maintaining a premises for the purposes of manufacturing a premises for the purposes of manufacturing or distributing a controlled substance pursuant to U.S.S.G. Section 2D1.1(b)(12). Counsel Graham advised the Petitioner that he was going to receive a " downward departure " based upon his proffer, thus counsel was not going to object to this enhancement. Counsel also failed to object to the PSI in his sentencing memorandum, or at sentencing, all based upon counsel advising him that it wasn't necessary because he would be receiving a downward departure for cooperation.

The Petitioner argues that the residence (house) was his Daughter's primary residence which the Petitioner did not reside nor maintained for the purposes of selling drugs. No controlled purchase's were made at this residence in this case prior to the execution of the search warrant. During the search of the residence, no drugs were found, no evidence relating to any sale of any drugs, and no prior drug sales were used as evidence from this residence.

Application Note 17 states that the enhancement apples to a Defendant who " knowing maintains a premises " (i.e, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance " including - storage " of a controlled substance for the purpose of distribution.

> Note 17 further provides:
>
>> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, " but must be one of the Defendant's primary or principal uses " for the premises, rather than one of the Defendant's incidental or collateral uses for the premises. In making this determination the court should consider how frequently the premises was used by the Defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the Defendant for lawful purposes.

There are no opinions from any Courts within the Sixth Circuit directly addressing the issue of whether the alleged drug activity is an " incidental/collateral or primary/principal use when the home is also used as a residence. In UNITED STATES -v- ORTIZ, 807 F. Supp. 2d. 746 (N.D. ILL. 2011), the government objected to the omission of the enhancement where a Defendant has been involved in arranging a drug shipment to arrive at an unoccupied house to which the Defendant had access. Id. at 748. The defendant, who pleaded guilty to a drug offense,

4.

admitted as part of his plea agreement that he was using the residence solely for the purpose of his drug distribution activities. Id. The instant offense was the first time the Defendant had used the property for distributing a controlled substance. " THE COURT FOUND THAT THIS ACTIVITY WAS INSUFFICIENT TO IMPOSE THE ENHANCEMENT !

In coming to this conclusion, the Court further applied the Seventh Circuit's jurisprudence under 21 U.S.C Section 856, 6 interpreting " maintaining a drug house " as using those premises for selling or storing drugs for a sustained period of time...: Id. (Citing:UNITED STATES -v- COSTA, 534 F. 3d. 574, 591 (7th Cir 2008)) (Emphasis omitted)

Drug distribution need not be the sole purpose for which the premises were maintained, but it " must have been one of the Defendant's primary uses of the premises, rather than an incidental or collateral activity. See, UNITED STATES -v- BELL, 766 F. 3d. 634 (6th. Cir. 2014).

## ISSUE TWO

### THE SENTENCE IS UNCONSTITUTIONAL BECAUSE PETITIONER DID NOT RECEIVE EFFECTIVE ASSISTANT OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES

COUNSEL FAILED TO REVIEW THE PRESENTENCE INVESTIGATION REPORT WITH THE PETITIONER IN DEPTH BEFORE SENTENCING...

Petitioner Mayfield asserts that his Counsel Scott Graham failed to review the PSR with the petitioner, which resulted in a higher sentence. Petitioner maintains that he would have received a shorter sentence had " meaningful objections " to the PSR been made. The record is clear that Counsel Graham reviewed the PSR " 10-minutes " before sentencing. An agent of the United States Marshal Service provided a copy to the Petitioner prior to sentencing, and furthermore Counsel Graham a week before sentencing came to visit me in the County jail, although Counsel Graham forgot to bring the PSR to that meeting. Counsel Graham advise the Petitioner he will review the PSR prior to sentencing on February 13, 2020.

Counsel Graham also " failed " to provide a copy of the Government's Sentencing Memorandum filed on February 6, 2020 - ECF No: 1129. It should be noted, that the Government in its memorandum clearly stated two major

5.

factors: (1) The government admitted on Page 3, line 12, that the Petitioner " proffered ". (2) But most significant the Government also stated on Page 4, lines 5 & 6, the Government decided not to file a U.S.S.G. 5K1.1. (this Court should note, the Petitioner received some legal mail after sentencing, although the County jail suggested that the Petitioner mail it home, rather than travel with it, the County jail mailed it to his Mother's residence. Furthermore, the Petitioner actually never saw the content of that legal mail until his Mother mailed it the Petitioner at FCI Greenville. That was the first time that the Petitioner saw a copy of the Government sentencing memorandum indicating that the Government was not going to pursue a 5K1.1 reduction of sentence) (See, copy of the Government's sentencing memorandum - attached)

    Counsel Graham filed his Sentencing memorandum on February 6, 2020 - ECF No: 1127 which was clearly filed before the Government's filing. Although, Counsel Graham failed to object to three major objections. (1) 2-point stash house enhancement (2) 4-point leadership role and (3) drug amount. This Court must also note, the Petitioner's plea was based upon a reduction of sentence premised upon his prior proffer sessions. The Petitioner in his " affidavit " supplied, clearly states that his Counsel Graham failed to advise the Petitioner that the Government " was not" going to move for a U.S.S.G. 5K1.1, it's also clear that Counsel Graham by failing to provide the Petitioner with a copy of the Government's Sentencing memorandum further support's the Petitioner's claim that he was going to get a reduction of sentence, thus there was no need to object to the above-mentioned three objections. If Counsel Graham would of filed an objection to the Government's Sentencing memorandum, the the issues mentioned above and a reduction of sentence based upon cooperation, it would of shown that Counsel Graham was not " concealing " this information from the Petitioner. Although Counsel Graham never filed any objections to the Governments Sentencing memorandum, thus clearly showing that Counsel " concealed " any information regarding a reduction in sentence. The record is clear that the Petitioner was of the opinion at sentencing that he was going to receive a sentence reduction based upon his cooperation, and the enhancements would be part of that reduction.

    Counsel Graham in his Sentencing memorandum dated February 6, 2020 - ECF No: 1127 filed no objections to the PSR, and only addressed issues related to incarceration costs, statistics of drug trafficking and the Fair Sentencing Act of 2010, without any objections. This Court must also consider that the Petitioner was facing advisory guideline range of 292 to 365 months of incarceration at the age of 53 years old, this could be a life sentence.

Section 6A1.2 - Disclosure of Presentence Report - (a) clearly states the probation officer must give the presentence report to the Defendant, the Defendant's attorney, and an attorney for the government at LEAST 35 DAYS before sentencing unless the Defendant waives this minimum period. Rule 32(e)(2), Fed. R. Crim. P.

(b) Within 14 days after reviewing the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guidelines ranges, and policy statements contained in or omitted from the report.

An objecting party must provide a copy of its objections to the opposing party and to the probation officer. After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report accordingly. Rule 32(f), Fed. R. Crim. P.

(c) At least 7-days before sentencing, the probation officer must submit to the Court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments of them. Rule 32(g), Fed. R. Crim. P.

**(i) Sentencing.**

(1) *In General.* At sentencing, the court:

**(A)** must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report;

**(B)** must give to the defendant and an attorney for the government a written summary of—or summarize in camera—any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information;

**(C)** must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and

**(D)** may, for good cause, allow a party to make a new objection at any time before sentence is imposed.

In this case, the Petitioner never received a copy of his Presentence Report until 10-minutes before sentencing clearly violating Rule 32(e)(2), Fed R. Crim. P. (the Petitioner did not waive this minimum period) Counsel Graham filed his objections on February 6, 2020, and the Petitioner was sentenced on February 13, 2020 clearly in violation of Rule 32(f) Fed. R. Crim. P., Section (b) of 6A1.2 -disclose of presentence report.

ISSUE THREE

## THE CONVICTION IS UNCONSTITUTIONAL BECAUSE PETITIONER DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION

FAILED TO OBJECT TO DRUG AMOUNT

Petitioner's Counsel Scott Graham failed to object to the amount of drugs of which caused the Petitioner's Offense Base Scoring being scored at a " level 34 " base upon the alleged 131 kilograms.

For the purposes of calculating a defendant's advisory Sentencing range, the government " must prove the amount " of drugs involved in the offense and Defendant's role, by the preponderance of the evidence, see, UNITED STATES -v- GILL, 348 F. 3d. 147, 151 (6th Cir. 2003); UNITED STATES -v- KESZTHELYI, 308 F. 30, 557, 576-78 (6th. Cir. 2002).

The sentencing Court " must err on the side of caution " in determining what amount of drugs is more likely than not attributable to the Defendant, GILL, 348 F. 3d. at 151; see also UNITED STATES -v- WALTON, 908 F. 2d 1289, 1302 (6th Cir. 1990) when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, and a Court MUST ERR ON THE SIDE OF CAUTION when determining that quantity on a Defendant.

At the case at hand, there were many other Defendant's involved in this indictment, all participants in different roles. The Court must err on the side of caution in determining the actual amount that was attributed to Petitioner Mayfield as his Counsel Scott Graham. Petitioner's counsel Scott Graham failed to object to the quantity/amount of drug's which was involved " solely " on the Petitioner, and establish that amount.

It should be noted that Wilbert Gentry a co-defendant received a sentence of 150 months based upon only 39 Kilograms, Case No: 1:19-PT-14 and Gentry was a " wholesale drug source " with a connection to the Sinaloa Cartel in Mexico !

The Petitioner discussed that he was not responsible for 131 Kilograms, and in fact he was only guilty of possession of 1 Kilogram. Although Counsel Scott Graham continued to advise the Petitioner that with his continue cooperation it would not matter based on the downward departure he would receive at sentencing.

The Petitioner states regardless of such downward departure, Counsel Graham failed to object on the drug amount. The Petitioner asserts if the amount of drugs involved in the offense is uncertain as in the case at

hand, the sentencing Court may make a reasonable estimate, after objections to the amount from Counsel Graham, although " NO OBJECTS " were made ! See, UNITED STATES -v- HERNANDEZ, 227 F.3d. 686, 699 (6th. Cir. 2002) The Court's estimate, however, must be supported by " competent evidence " with some minimum indicium of reliability beyond mere allegation.

SECTION 1B1.3 - RELEVANT CONDUCT

**§1B1.3. Relevant Conduct (Factors that Determine the Guideline Range)**

(a)     CHAPTERS TWO (OFFENSE CONDUCT) AND THREE (ADJUSTMENTS). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1)     (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

(i)     within the scope of the jointly undertaken criminal activity,

(ii)    in furtherance of that criminal activity, and

(iii)   reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)     solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)     all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)     any other information specified in the applicable guideline.

(C)  **Fact-Based Determination.**—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i)  the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)  the degree to which the defendant participated in planning or organizing the criminal activity;

§3B1.3

(iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)  the degree to which the defendant stood to benefit from the criminal activity.

Counsel Scott Graham also failed to object to the conduct of other's being applied to the Petitioner. This Court is well aware the conduct of others that meets all three criteria set forth in - subdivisions (i) through (iii) (i.e, within the scope in furtherance and reasonable foreseeable ). However, when the conduct of others does not meet any of the criteria set forth in subdivisions (i) through (iii), the conduct is not relevant conduct under this provision.

1.   **Sentencing Accountability and Criminal Liability.**—The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator.

2.   **Accountability Under More Than One Provision.**—In certain cases, a defendant may be accountable for particular conduct under more than one subsection of this guideline. If a defendant's accountability for particular conduct is established under one provision of this guideline, it is not necessary to review alternative provisions under which such accountability might be established.

**Applicability of Adjustment.—**

(A)   **Substantially Less Culpable than Average Participant.**—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

By Counsel Graham failing to object to the drug amount and or relevant conduct, the Court was not presented with an meaningful argument that relevant conduct is not necessary the same for every participant, as states above in UNITED STATES -v- GENTRY. In order to determine the Defendant's accountability for the conduct of others under subsection (A)(1)(B), Defendant's counsel " must present " a Motion to the Court outlining the Defendant's own accountability, then the Court will first determine the scope of the criminal activity of the particular Defendant.

In the case at hand, Counsel Graham advised Petitioner Mayfield once again he was going to receive a downward departure for cooperation, thus, this would not be an issue to argue. Once again Counsel Graham violated his oath as counsel and as stated in STRICKLAND, provided " INEFFECTIVE ASSISTANCE OF COUNSEL "

## ISSUE FOUR

## THE CONVICTION IS UNCONSTITUTIONAL BECAUSE PETITIONER DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION

FAILED TO OBJECT TO 4-LEVEL LEADERSHIP ROLE

Counsel Graham failed to file an object to the Presentence Report and at sentencing to the aggravating role enhancement under USSG Section 3B1.1(b).

The Presentence investigation report in this case recommended a 4-level aggravating role enhancement to the Petitioner pursuant to the United States Sentencing Guidelines (USSG) offense level pursuant to USSG Section 3B1.1(a), for being the alleged organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive. Counsel Graham failed to object to the PSR and failed to object he my Sentencing Memorandum. At sentencing, the Court applied a 4-level aggravating role enhancement pursuant to USSG Section 3B1.1(b) for being an allege manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive. Counsel graham provided " ineffective assistance of counsel " prior to sentencing and at sentencing based upon his failure to object to the application of this 4-level enhancement.

The Petitioner was " prejudiced " by Counsel Graham's " deficient performance ", because if he had properly reviewed my actual conduct, my Sentencing guideline would have been reduced by 4-level which would have significantly reduce my Sentence range. But once again Counsel Graham continued to advise the Petitioner objecting to the 4-level enhance would only cause hardship for his " downward departure " which Counsel Graham repeatedly instructed the Petitioner.

. **Role** Adjustment

Guideline Section 3B1.1 imposes a sliding scale for enhancements based on a defendant's participation in a crime as a "leader or organizer," or as a "manager or supervisor" of a criminal scheme. The guideline assigns enhancements to the tiers of **leadership** as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels. U.S.S.G. § 3B1.1. "The primary question for a § 3B1.1(c) enhancement is whether the defendant exerted control over at least one individual within a criminal organization." *United States v. Tanner*, 837 F.3d 596, 603 (6th Cir. 2016) (citing *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000)). "Factors relevant to control include 'the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right{2019 U.S. Dist. LEXIS 22} to a larger share of the fruits of the crime, [and] the degree of participation in planning or organizing the offense.'" *Ibid.* (quoting *United States v. Salyers*, 592 Fed. App'x 483, 485 (6th Cir. 2015); U.S.S.G. § 3B1.1 cmt. 4)). "For purposes of the adjustment, more than one defendant can lead participants in criminal activity." *United States v. Christian*, 804 F.3d 819, 825 (6th Cir. 2015) (citing U.S.S.G. § 3B1.1 cmt. 4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.")).

To qualify for an enhancement under either Sections 3B1.1(a) or 3B1.1(b), a defendant must have managed or supervised " one or more participants ", and not merely the criminal scheme. See, USSG Section 3B1.1, cmt 2; See, UNITED STATES -v- GORT-DiDONATO, 109 F. 3d. 318, 321 (6th Cir. 1997). The United States Court of Appeals for the Sixth Circuit has " repeatedly held that in general, a Defendant must have exerted control over at least one individual within a criminal organization for the enhancement of Section 3B1.1 to be warranted. See, UNITED STATES -v- SALYERS, 592 Fed Appx. 483, 485 (6th Cir. 2015) (Internal quotations and citations omitted)

The Sixth Circuit derives this control requirement from the commentary to Section 3B1.1, which lays out factors for sentencing Courts to consider when applying the enhancement. These factors are: the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

The Petitioner repeatedly told Counsel Graham he simply purchased drugs from " one individual ", then " resold " it to several others ! Just as the Defendant in SALYERS, to the extent that my customers either resold the drugs or used them for personal use. I had not say in that level of distribution, I did not recruit others to sell drugs for me, nor did the Petitioner issue orders to any of his customers. The Petitioner's only role was to sale drugs to multiple individuals. The Petitioner had " NO " control over what they did with the drugs after the purchases. See, UNITED STATES -v- SWANBERG, 370 F. 3d. 622, 629 (6th. Cir. 2004). Although the Petitioner's plea was based upon a downward departure advise by Counsel Graham, which caused " ineffective assistance of counsel ".

13.

## ISSUE FIVE

### THE CONVICTION IS UNCONSTITUTIONAL BECAUSE PETITIONER DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION

PETITIONERS COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE GOVERNMENT'S SENTENCING MEMORANDUM OBJECTING TO A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. SECTION 5K1.1

ANALYSIS:

As other Courts in this District have recognized, the Sixth Circuit set forth standards surrounding alleged breaches of proffer agreements in UNITED STATES -v- FITCH, 964 F. 2d. 571 (6th Cir. 1992), See, UNITED STATES -v- WALKER, 204 U.S. Dist. Lexis 39545, 2014 WL 1154346 at *3 (E.D. Mich. 2014); UNITED STATES -v- BEASLEY, 2014 U.S. Dist 68684, 2014 WL 2095357 at (E.D. Mich. 2014).

The record is clear that Petitioner's Counsel graham and the government agreed to enter into " Proffer Sessions " in exchange for a " Downward Departure ", in fact in was part of the Petitioner's " Plea Agreement ". Petitioner's states in FITCH, the Sixth Circuit has recognized that to secure a Defendant's cooperation in a criminal investigation the government may informally grant a downward departure in exchange for information and testimony. See, FITCH, 964 F. 2d. at 574.

Because these types of agreements are " Contractual in Nature ", and subject to contract law standards, the conditions which will constitute a " Breach " of downward departure agreement are governed by the agreement itself. Id. (citations omitted). The government bears the burden to prove that the Petitioner breached the agreement, and that the breach was " material and substantial ". UNITED STATES -v- HARWICH, 574 Fed. Appx 582, 592 (6th Cir. 2014).

The record has been established in this pleading that Counsel Graham failed to my objection's to the government's Sentence Memorandum indicating they were objecting to a downward departure. In fact, the Petitioner never received notice via telephone communication or correspondence from Counsel Graham that the government was objecting to a downward departure. Furthermore, Petitioner Mayfield did not receive a copy of the government's objections until his Mother mailed his legal documents to FCI Greenville well after he was sentenced. (See, affidavit enclosed)

LEGAL PRINCIPLES:

It is well-established in the Sixth Circuit how the Court is to address an " alleged breach " of a argument regarding " proffer agreements ".

To secure a Defendant's cooperation in a criminal investigation, the government may informally grant him a downward departure in exchange for his cooperation and testimony. An agreement to dismiss charges and also a downward departure or a Rule 35 B Motion. If a firm agreement has been entered into, the government bears the burden of proving that the Defendant failed to satisfy his part of the deal. The record is further that the Petitioner had proffer sessions, and his counsel was aware of this sessions. The FITCH Court also held that the government must not only prove a breach, but must also prove that the breach was material and substantial. Id. The significance of a breach is measured as follows:

> " Although and inadvertent omission or oversight would not rise to the level
> of materially false statement so as to constitute a breach of the government
> agreement, a bad faith, intentional, substantial omission....does constitute
> a material false statement and thereby a breach of the agreement. Id. (quoting
> with approval UNITED STATES -v- CASTELBUONE, 643 F. Supp. 965, 971
> E.D. N.Y. 1986)

The Petitioner's guilty plea was clearly based on a " negotiated plea ". A " negotiated plea " is one that contains any restrictions regarding sentencing under Rule 11, a " significant " downward departure based upon proffer sessions, and cooperation through testimony, a 5K1.1 provision or any other concessions by the government that could impinge upon the Court's sentencing authority or discretion. The Court ordinarily does not accept plea agreements under Rule 11(c)(1)(c), but readily accepts agreements under Rule 11 (c)(1)(B) that include non-binding sentencing recommendations; the Court also generally accepts plea agreement that contemplate well-founded 5K1.1 departures. Although 11(c)(1)(B) sentencing recommendations are not binding, the Court nonethe less gives them careful consideration, and often agrees.

The record is further clear as stated in the Petitioner's affidavit the Petitioner's Counsel Graham failed to advise the Petitioner that the government objected in there sentencing memorandum to any downward departure, furthermore Counsel Graham failed to file an objection to the government's objection's. It's also clear that Counsel Graham failed to file a motion to withdraw the Petitioner plea.

If a firm agreement has been entered into, the government bears the burden of proving that the Defendant failed to satisfy his part of the deal. In any event, the most important consideration is the incriminating nature

of the proffered statements, not the amount of information provided to the government.

The Petitioner was facing a long sentence, the Petitioner appeared before this Court expecting to receive a downward departure, only to find that Counsel Graham failed to communicate the government true intentions which was NO DOWNWARD DEPARTURE.

> The Sixth Circuit set forth the applicable standards surrounding alleged breaches of **proffer** agreements in United States v. Fitch, 964 F.2d 571, 574 (6th Cir. 1992):
>
>> To secure a defendant's cooperation in a criminal investigation, the government may informally grant him immunity in exchange for his testimony. United States v. Pelletier, 898 F.2d 297, 301 (2d Cir. 1990). An agreement not to prosecute is contractual in nature, and subject to contract law standards. United States v. Brown, 801 F.2d 352, 354 (8th Cir. 1986). The conditions which will constitute a breach of the immunity agreement are governed by the agreement itself. United States v. Packwood, 848 F.2d 1009, 1012 (9th Cir. 1988). {2014 U.S. Dist. LEXIS 9}If a firm agreement has been entered into, the government bears the burden of proving that the defendant failed to satisfy his part of the deal. Brown, 801 F.2d at 355. The Government must prove that any breach was "material and substantial." Id.

WHEREFORE, the Petitioner Howard Mayfield respectfully asks this Honorable Court to " GRANT " his Section 2255 and or hold an evidentiary hearing to review the facts set forth in this Petition.

Respectfully submitted on this __8th__ day of __August__, 2022

_/s/ Howard Mayfield_
Howard Anthony Mayfield # 11647-040
Federal Correctional Institution 2
P.O. box 1500
Butner, NC 27509

### CERTIFICATE OF SERVICE

I HEREBY Howard Mayfield states that the information stated in this Section 2255 are true and accurate, and further states that on this __8th__ day of __August__, 2022 placed a true copy of this document with first class postage, and mailed to this Honorable Court and the United States Assistant Attorney.

_/s/ Howard Mayfield_
Howard A. Mayfield # 11647-040









FROM: Howard Mayfield #16647-040
22655 Federal Correctional
Institute 2
P.O. Box 1500
Butner, NC 27509

TO: Judge Paul Maloney
137 Federal Bldg
410 W. Michigan Ave
Kalamazoo, MI 49007



