UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

HOWARD MAYFIELD,

      Defendant-Movant,

v.

UNITED STATES OF AMERICA,

      Plaintiff-Respondent.

_____/

Case No. 1:22-cv-808

Honorable Paul L. Maloney

## **OPINION AND ORDER**

Currently pending before the Court is Defendant-Movant Howard Mayfield ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

## I.    Background

On May 23, 2018, Defendant was charged in a Criminal Complaint with conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine and a quantity of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Crim. Compl., *United States v. Mayfield*, No. 1:18-cr-167-1 (W.D. Mich.) (ECF No. 1). After Defendant's arrest, attorney Scott Graham was appointed to represent him.

On July 25, 2018, a grand jury returned an Indictment charging Defendant with: (1) conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine and 28 grams or more of cocaine base, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846; (2) distribution of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); and (3) three counts of possession with intent to distribute cocaine, in violation of 18 U.S.C. § 2 and 21

U.S.C. § 841(a)(1). *See* Indictment, *id.* (ECF No. 172). On August 15, 2018, the government filed an Information and Notice of Prior Felony Drug Conviction, noting that Defendant had previously been convicted of five separate felony drug charges and that he would be subject to enhanced penalties if convicted of Counts One, Two, Four, Eighteen, and Thirty-Three because of those prior convictions. *See* Information, *id.* (ECF No. 330).

On October 2, 2018, Defendant, through counsel, filed a motion to suppress, seeking to suppress evidence obtained from the wiretaps of two phones. *See* Mot. to Suppress, *id.* (ECF No. 361). The Court held a hearing regarding the motion on January 4, 2019. In an opinion and order entered on January 22, 2019, the Court denied the motion. *See* Op. and Order, *id.* (ECF No. 497).

On January 18, 2018, the government filed an Amended Information and Notice of Prior Drug Conviction pursuant to the First Step Act of 2018. *See* Am. Information, *id.* (ECF No. 490). The Amended Information noted that the First Step Act had amended portions of the Controlled Substances Act, "including the requirements for enhanced penalties pursuant to 21 U.S.C. § 851." *Id.* (ECF No. 490, PageID.1560). The Amended Information noted that on July 27, 2004, Defendant had been convicted in this Court of two counts of possession with intent to distribute crack cocaine. *Id.* (ECF No. 490, PageID.1563).

On June 20, 2019, the government filed a plea agreement in which Defendant agreed to plead guilty to Count One of the Indictment, charging him with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Plea Agreement, *id.* (ECF No. 702, PageID.3707). The plea agreement set forth that Defendant faced a mandatory minimum of 10 years' incarceration and a maximum of life. *Id.* (ECF No. 702, PageID.708). Notably, the plea agreement also indicated that the government would move to dismiss the Amended Information and Notice of Prior Felony

Drug Conviction, "which would otherwise enhance the Defendant's sentence." *Id.* (ECF No. 702, PageID.3724).

Defendant appeared before Magistrate Judge Ellen Carmody for his change of plea hearing on June 20, 2019. Magistrate Judge Carmody issued a Report and Recommendation recommending that Defendant's guilty plea be adopted, and the Court adopted that recommendation in an order entered on July 16, 2019. *See* R.&R. and Order, *id.* (ECF Nos. 708, 742).

On June 21, 2019—one day after his change of plea hearing—Defendant mailed a letter to the Court raising concerns about his guilty plea. *See* Letter, *id.* (ECF No. 716). The Court received that letter on June 26, 2019. In the letter, Defendant stated that attorney Graham "ha[d] [him] sign something [he] did not read." *Id.* (ECF No. 716, PageID.3901). Defendant also indicated that there was "false information" set forth in the factual basis portion of his plea agreement. *Id.* Defendant stated that he wanted to withdraw his guilty plea because the government was trying "to get [him] on the stand and lie." *Id.* Defendant also mentioned wanting a new attorney. *Id.* (ECF No. 716, PageID.3902).

The Court held a hearing regarding Defendant's letter on June 27, 2019. *See* Hr'g Tr., *id.* (ECF No. 724). During that hearing, Defendant indicated that he wanted attorney Graham to continue to represent him. *Id.* (ECF No. 724, PageID.3927). Defendant also indicated that his questions and concerns about the plea agreement had been answered, and that he understood his obligations under the plea agreement. *Id.* (ECF No. 724, PageID.3928). Defendant represented that he did not want to withdraw his plea and wanted to be bound by the plea agreement. *Id.* Defendant also reaffirmed the factual basis set forth during the change of plea hearing. *Id.* (ECF No. 724, PageID.3930).

Prior to sentencing, a Probation Officer prepared Defendant's Presentence Investigation Report (PSR). *See* PSR, *id.* (ECF No. 1096). The PSR noted that Defendant was being held accountable for 131 kilograms of cocaine and 23.3. grams of heroin. *See id.* (ECF No. 1096, PageID.8578). The Probation Officer assessed a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(12) because Defendant maintained a drug premises, as well as a four-level increase pursuant to U.S.S.C. § 3B1.1(a) because Defendant was "an organizer or leader of a criminal activity that involved five or more participants." *Id.* (ECF No. 1096, PageID.8579). Defendant's total offense level was 37. *Id.* His prior criminal history placed him at criminal history category IV. *Id.* (ECF No. 1096, PageID.8592). The Probation Officer calculated Defendant's guidelines as calling for 292 to 365 months of incarceration. *Id.* (ECF No. 1096, PageID.8607).

On February 6, 2020, Defendant, through counsel, filed a sentencing memorandum in which he requested that the Court grant a downward variance from the Sentencing Guidelines. *See* Sentencing Memo., *id.* (ECF No. 1127). The parties appeared before the Court for Defendant's sentencing on February 13, 2020. The Court declined to grant Defendant's request for a downward variance, noting that "a sentence near the top of the advisory guideline range is the appropriate sentence in this case." *See* Sentencing Tr., *id.* (ECF No. 1222, PageID.11504). The Court sentenced Defendant to 360 months of imprisonment, to be followed by 5 years of supervised release. *See* J., *id.* (ECF No. 1144).

Defendant subsequently appealed, asserting that trial counsel "gave him erroneous advice to enter a plea and was ineffective at sentencing." *See* 6th Cir. Order, *id.* (ECF No. 1442, PageID.16285). The United States Court of Appeals for the Sixth Circuit concluded that in light of Defendant's plea colloquy, the validity of his plea could not "be challenged in good faith." *Id.* (ECF No. 1442, PageID.16288). The Sixth Circuit noted further that any claims of ineffective

assistance of counsel were "better left to a post-conviction motion to vacate under 28 U.S.C. § 2255." *Id.* (ECF No. 1442, PageID.16289). The Sixth Circuit, accordingly, affirmed this Court's judgment.

Defendant filed his § 2255 motion (ECF No. 1) on September 2, 2022. In an order (ECF No. 3) entered on September 6, 2022, the Court directed the government to file a response to the motion. The government subsequently moved for an extension of time and an order authorizing release of information subject to the attorney-client privilege. (ECF No. 6.) the court granted that motion in an order (ECF No. 7) entered the same day. Subsequently, attorney Graham filed an affidavit responding to Defendant's claims of ineffective assistance. (ECF No. 9.) The government filed its response (ECF No. 10) on March 3, 2023.

## II.    Analysis

### A.    Legal Standards

#### 1.    Section 2255 Proceedings in General

A federal prisoner may challenge his sentence by filing in the district court where he was sentenced a motion under 28 U.S.C. § 2255. A valid § 2255 motion requires a movant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Non-constitutional errors generally are outside the scope of § 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted). As a general rule, a claim not raised on direct

6

review is procedurally defaulted and may not be raised on collateral review absent a showing of either (1) cause and actual prejudice; or (2) actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).

### 2.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

### 3.    Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if

Defendant's allegations "cannot be accepted as true because they are contradicted by the record,

inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*,

178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

    **B.**    **Discussion**

Defendant raises the following grounds for relief in his § 2255 motion:

I.    Counsel failed to object to the offense level enhancement premised upon maintaining a premises for drug distribution;

II.    Counsel failed to review the PSR with Defendant "in depth before sentencing";

III.    Counsel failed to object to the total drug amount;

IV.    Counsel failed to object to the offense level enhancement premised upon Defendant's leadership role; and

V.    Counsel was ineffective for failing to object to the government's objection to a downward departure pursuant to U.S.S.G. § 5K1.1

(ECF No. 1, PageID.4–14.) The government contends that all of Defendant's claims lack merit.

(ECF No. 10.)

    **1.**    **Ground I—Failure to Object to Drug Premises Enhancement**

In ground I, Defendant faults attorney Graham for not objecting to the two-level

enhancement applied to Defendant's offense level premised upon maintaining "a premises for the

purposes of manufacturing or distributing a controlled substance." (§ 2255 Mot., ECF No. 1,

PageID.4.) Defendant avers that counsel told him that he was not going to object to the

enhancement because Defendant was going to receive a downward departure. (*Id.*) According to

Defendant, the house in question was his daughter's primary residence, and Defendant did not

reside there or maintain the house "for the purpose[] of selling drugs." (*Id.*)

Attorney Graham has addressed Defendant's assertions in his affidavit. He states that he never promised that Defendant would receive a downward departure. (ECF No. 9, PageID.69, ¶¶ 63–64.) Attorney Graham avers that an objection to the drug premises enhancement would have been frivolous because evidence "showed that [Defendant] directed a number of others to use his daughter's house as a 'stash house.'" (*Id.*, ¶¶ 67–68.) As discussed below, the Court agrees.

Section 2D1.1(b)(12) of the Sentencing Guidelines provides that the offense level is increased by 2 levels if the "defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The Sentencing Commission's commentary sets forth the following factors to consider when determining whether to apply the enhancement: "(A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (b) the extent to which the defendant controlled access to, or activities at, the premises." *Id.* cmt. 17. Moreover,

> [m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

*Id.*

With respect to § 2D1.1(b)(12), the Sixth Circuit has held that "the drug-house enhancement applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *See United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013) (citations omitted). As the *Johnson* Court explained:

> A defendant thus may qualify for the drug house enhancement so long as "*one of* [his] primary or principal uses for the premises" is the distribution of drugs. A defendant also need not maintain the whole home for distributing drugs to qualify for the enhancement; using a "room" or another "enclosure" for "storage" of the drugs suffices, as the application note indicates.

*Id.* (internal citations omitted). Furthermore, the Sixth Circuit has held that "[i]f a defendant does not have a legal interest in the premises, the enhancement may still apply if the government makes a sufficient showing of de facto control." *See United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018). Factors to consider when making that determination include "control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity. . . ." *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010) (quoting *United States v. Clavis*, 956 F.2d 1079, 1091 (11th Cir. 1992)). Furthermore, the Sixth Circuit has held that the "premises enhancement [can] be applied to [a co-conspirator] even though he did not personally maintain a premises for purposes of drug manufacturing or distribution." *United States v. Rich*, 14 F.4th 489, 497 (6th Cir. 2021).

Notably, as part of his plea agreement, Defendant agreed that "[d]uring the entirety of the conspiracy, [he] stored cocaine, cocaine base, and cash drug proceeds at the residence of Shameikia Liptrot, with Liptrot's knowledge and permission." *See* Plea Agreement, *United States v. Mayfield*, No. 1:18-cr-167-1 (W.D. Mich.) (ECF No. 702, PageID.3715) (capitalization corrected). Moreover, Defendant's PSR sets forth numerous occasions when Defendant made trips to Liptrot's residence to store or retrieve drugs or drug proceeds. *See* PSR, *id.* (ECF No. 1096, PageID.8525–8551).

Shameikia Liptrot, Defendant's daughter, pleaded guilty to unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b), (d). *See* Plea Agreement, *United States v. Liptrot*, No. 1:18-cr-167-15 (W.D. Mich.) (ECF No. 820). At sentencing, Liptrot, through counsel, objected to the application of the two-level drug premises enhancement under § 2D1.1(b)(12). *See* Sentencing Tr., *id.* (ECF No. 1382, PageID.15576). Liptrot argued that she never had physical contact with the drugs. *Id.* (ECF No. 1382, PageID.15577). She admitted that

10

she "was the sole tenant of that property and that drugs were, in fact, stored at her place." *Id.* She also admitted to giving her father a key to the property. *Id.* Overall, Liptrot argued that although "it was her place, she never took any affirmative acts to distribute or manufacture any of the drugs." *Id.*

The Court overruled Liptrot's objection, citing an "intercepted communication about offering to put a lock on the closet." *Id.* (ECF No. 1382, PageID.15579). The Court also described Liptrot's residence as the "major location where [Defendant's] drugs were stored or processed." *Id.* There was "no contest that she possessed the apartment, it was leased in her name, [and] she gave [Defendant] a key." *Id.*

In light of the foregoing, the Court cannot agree with Defendant that attorney Graham was ineffective for not objecting to the drug-premises enhancement. The evidence clearly established that even though the apartment belonged to Liptrot, Defendant had full access to the apartment because Liptrot had given him a key. Likewise, Defendant admitted to storing drugs and drug proceeds at Liptrot's residence. Moreover, Liptrot's residence was central to Defendant's drug conspiracy, as it was the major location used to store drugs and drug proceeds. Any argument otherwise by attorney Graham would have been meritless. Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). Defendant, therefore, is not entitled to relief with respect to ground I.

### 2.     Ground II—Failure to Review PSR

In ground II, Defendant faults attorney Graham for not reviewing the PSR with him "in depth before sentencing." (§ 2255 Mot., ECF No. 1, PageID.5.) According to Defendant, attorney Graham reviewed the PSR 10 minutes before sentencing. (*Id.*) He avers that attorney Graham

11

forgot to bring a copy of the PSR to a meeting he had with Defendant a week before sentencing, and failed to provide a copy of the government's sentencing memorandum to Defendant. (*Id.*) Defendant suggests that attorney Graham's failure to review the PSR with him in depth led to Defendant Graham not filing any objections to the PSR, particularly objections to the enhancements for leadership and maintaining a drug premises, as well as the total drug amount.

Attorney Graham has responded to Defendant's assertions, stating that he did review the "draft and final PSRs" with Defendant. (ECF No. 9, PageID.70,0020¶ 79.) Moreover, he gave Defendant "copies of draft and final PSRs," and met with Defendant "before sentencing both at the Clinton County Jail and at the Court's lockup." (*Id.*, PageID.68, ¶¶ 58–59.)

Contrary to Defendant's assertion, attorney Graham did file objections to the initial PSR. *See* Objections, *United States v. Mayfield*, No. 1:18-cr-167-1 (W.D. Mich.) (ECF No. 1068). Those objections included an objection to the 131 kilograms of cocaine attributed to Defendant. *Id.* Moreover, while attorney Graham did not object to the leadership and drug premises enhancements, it would have been futile for him to do so for the reasons set forth *supra* and *infra*. Finally, at sentencing, both Defendant and attorney Graham affirmed that they had received "ample opportunity" to discuss the PSR with each other. *See* Sentencing Tr., *id.* (ECF No. 1222, PageID.11490). Defendant's assertion in open court, therefore, "must prevail over the assertions in his § 2255 motion." *Allen v. United States*, No. 21-5894, 2022 WL 837982, at *2 (6th Cir. Mar. 17, 2022). Because the record reflects that attorney Graham reviewed the PSR with Defendant and filed objections to the PSR, Defendant is not entitled to relief with respect to ground II.

### 3.    Ground III—Failure to Object to Drug Amount

In ground III, Defendant faults attorney Graham for not objecting to the drug amount attributed to Defendant for purposes of sentencing. (§ 2255 Mot., ECF No. 1, PageID.8.) Defendant argues that he was "not responsible for 131 [k]ilograms, and in fact he was only guilty

of possession of 1 [k]ilogram." (*Id.*) According to Defendant, attorney Graham "continued to advise [him] that with his continue[d] cooperation it would not matter based on the downward departure he would receive at sentencing." (*Id.*) Defendant asserts further that attorney Graham should have objected "to the conduct of other[s] being applied to [Defendant]. (*Id.*, PageID.10.)

Attorney Graham avers that any objection to the drug amount would have been frivolous. (ECF No. 9, PageID.69, ¶ 71.) He states that the "evidence showed that significant drug trafficking was known or reasonably foreseeable to [Defendant]." (*Id.*, ¶ 72.) Moreover, the "drug quantity used for guideline purposes was, in [attorney Graham's] opinion, a conservative amount." (*Id.*, ¶ 73.)

After reviewing the record, the Court cannot agree with Defendant that attorney Graham was ineffective for not objecting to the drug amount attributed to Defendant. As noted above, Defendant was held responsible for 131 kilograms of cocaine and 23.3 grams of heroin, equal to at least 10,000 kilograms but less than 30,000 kilograms of converted drug weight. *See* PSR, *United States v. Mayfield*, No. 1:18-cr-167-1 (W.D. Mich.) (ECF No. 1096, PageID.8569–8570). During his proffer session with the government, Defendant admitted to personally possessing 45.5 kilograms of cocaine during the course of the conspiracy. *Id.* (ECF No. 1096, PageID.8566–8567). That statement did not include several kilograms of cocaine attributable to Defendant through codefendants. *See id.* (ECF No. 1096, PageID.8532, 8561–8562, 8564).

Defendant's plea agreement provided that any statements made during a proffer could not be "used by the Government to enhance the Defendant's sentence." *See* Plea Agreement, *id.* (ECF No. 702, PageID.3725). However, the plea agreement provided further that such statements could be used by the government "if the Defendant takes a position at sentencing that contradicts information provided by the Defendant pursuant to this agreement or any proffer agreement." *Id.*

Had Defendant, through attorney Graham, argued at sentencing that he was responsible for less cocaine than he admitted to in his proffer session, the Government could have used Defendant's statements against him to corroborate its independent evidence of the amounts at issue. Moreover, the government likely would have objected to Defendant receiving a three-point offense level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), (b). *See* PSR, *id.* (ECF No. 1096, PageID.8579). Had Defendant lost that reduction, and assuming that any objection to the drug weight amount was overruled, his total offense level would have been 40, leading to a much higher guidelines range for sentencing purposes.

Granted, the Probation Officer who prepared Defendant's PSR relied heavily on statements made by co-defendant Wilbert Gentry during Gentry's proffer statement to calculate the drug amount attributable to Defendant. *See id.* (ECF No. 1096, PageID.8569–8570). That calculation resulted in a total of 131 kilograms of cocaine, which was much higher than the amount Defendant admitted to in his proffer session. Defendant, however, has not provided any evidence plausibly suggesting that the amount of cocaine personally attributable to him was less than 45.5 kilograms. Moreover, as discussed *supra*, any challenge to the calculated drug weight amount would have likely led to Defendant losing credit for acceptance of responsibility, leading to higher guidelines exposure. Counsel's decision to not challenge the amount, therefore, would have been a reasonable strategic decision on behalf of Defendant. Because Defendant has not demonstrated that attorney Graham was ineffective by not challenging the drug weight attributed to Defendant, Defendant is not entitled to relief on ground III.

### 4.    Ground IV—Failure to Object to Leadership Enhancement

Next, Defendant faults attorney Graham for not objecting to the four-level leadership enhancement imposed under § 3B1.1(a) of the Sentencing Guidelines. (§ 2255 Mot., ECF No. 1, PageID.12.) According to Defendant, attorney Graham told Defendant that any objection would

"only cause hardship for his 'downward departure.'" (*Id.*) Defendant argues that attorney Graham should have objected to the enhancement because Defendant only purchased drugs from one individual then resold them to several others. (*Id.*, PageID.13.) Defendant argues that he "did not recruit others to sell drugs for [him], nor did [he] issue orders to any of his customers." (*Id.*) Instead, Defendant argues, his "only role was to [sell] drugs to multiple individuals." (*Id.*)

Under § 3B1.1(a), a four-level increase is applied to the offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *See* U.S.S.G. § 3B1.1(a). The Sentencing Commission's commentary notes that a "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* cmt. 1. The Commission has also set forth the following factors to consider:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

*Id.* cmt. 4. Notably, the Sixth Circuit has held that "[c]ontrol of all participants is not required; the enhancement is applicable if the defendant exercised control over even a single participant in the conspiracy." *See United States v. Boeve*, 832 F. App'x 391, 395 (6th Cir. 2020).

In his plea agreement, Defendant agreed that his girlfriend at the time, Jennifer Tadeo, facilitated drug transactions at Defendant's request. *See* Plea Agreement, *United States v. Mayfield*, No. 1:18-cr-167-1 (W.D. Mich.) (ECF No. 702, PageID.3716–3717). Moreover, Defendant's PSR detailed an intercepted communication during which Defendant instructed Tadeo

"to move 'stuff' to the basement." *See* PSR, *id.* (ECF No. 1096, PageID.8531). During a proffer

session, Tadeo indicated that she picked up cocaine for Defendant because she "felt obligated [to

do so] because she was [Defendant's] girlfriend and he provided for her." *Id.* (ECF No. 1096,

PageID.8561).

Defendant's PSR also detailed how he directed other members of the conspiracy. For

example, on May 2, 2018, Defendant directed Monica Laster to "come to her back door and

retrieve a bag from him." *See id.* (ECF No. 1096, PageID.8533–8534). Defendant used Laster's

residence to store cocaine as well. *Id.* (ECF No. 1096, PageID.8557). Furthermore, as part of his

plea agreement, Defendant admitted to using codefendants Laster, Tadeo, Nicole Starr, and

Tamara Mingo to accompany him on road trips to pick up cocaine. *See* Plea Agreement, *id.* (ECF

No. 702, PageID.3712–3714). Finally, Defendant admitted to recruiting codefendant Ryan Brown

to connect him with cocaine supplier Craig James. *Id.* (ECF No. 702, PageID.3713).

Attorney Graham has responded to Defendant's assertion, stating that the "evidence

showed that [Defendant] supervised and directed more than 5 people as part of the drug

conspiracy." (ECF No. 9, PageID.70, ¶ 76.) In light of the foregoing, the Court agrees with attorney

Graham. The evidence is clear that well more than 5 people were involved in the drug distribution

conspiracy, and that Defendant directed various members of the conspiracy by recruiting them,

using them to pick up shipments, and instructing them to take various other actions. Any argument

by attorney Graham otherwise would have been meritless. *See Ludwig*, 162 F.3d at 459. Defendant,

therefore, is not entitled to relief with respect to ground IV.

### 5. Ground V—Failure to Object to Government's Opposition to Downward Departure Under § 5K1.1

Finally, as his last ground for relief, Defendant faults attorney Graham for not objecting to

the government's objection to Defendant receiving a downward departure pursuant to U.S.S.G.

§ 5K1.1. (§ 2255 Mot., ECF No. 1, PageID.14.) Defendant argues that as part of his plea agreement, he agreed to engage in a proffer session with the government, and that he would receive a downward departure in exchange for that session. (*Id.*) Defendant suggests that attorney Graham should have objected to the government's decision to not move for a downward departure as a breach of the plea agreement. (*Id.*)

As an initial matter, Defendant's argument that the government breached the plea agreement is based on his misreading of the plea agreement. The plea agreement never set forth that Defendant would automatically receive a downward departure for engaging in a proffer session. Instead, the plea agreement set forth that the "U.S. Attorney's Office will decide whether to file a motion for departure of reduction of sentence pursuant to Sentencing Guidelines § 5K1.1, 18 U.S.C. § 3553(e), and/or Rule 35(b) of the Federal Rules of Criminal Procedure." *See* Plea Agreement, *United States v. Mayfield*, No. 1:18-cr-167-1 (W.D. Mich.) (ECF No. 702, PageID.3725). By signing the plea agreement, Defendant "fully under[stood] that such a motion may be made pursuant to law if, and only if, the Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others." *Id.* (ECF No. 702, PageID.3725–3726). The plea agreement also set forth that the type of motion to file, if any, and the determination of whether Defendant had provided substantial assistance "will be made in the sole discretion of the U.S. Attorney's Office." *Id.* (ECF No. 702, PageID.3726). Defendant "fully under[stood] that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence." *Id.* During his change of plea hearing, Defendant voiced his understanding that the government was not bound to consider filing a sentence reduction motion. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 726, PageID.3961).

17

Thus, it was within the sole discretion of the government to determine whether or not to file a motion for a sentence reduction under § 5K1.1. Because the plea agreement left that determination to the government's sole discretion, "counsel could not challenge the government's decision not to move for a substantial-assistance reduction." *See Cisneros v. United States*, No. 19-1357, 2021 WL 4270885, at *6 (6th Cir. Jan. 28, 2021). For that reason alone, Defendant's fifth claim for relief lacks merit.

Moreover, Defendant cannot demonstrate any prejudice from attorney Graham's purported "failure" to object. Section 5K1.1 provides:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> **(a)** The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
>> **(1)** the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>>
>> **(2)** the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>>
>> **(3)** the nature and extent of the defendant's assistance;
>>
>> **(4)** any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>>
>> **(5)** the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. The Sentencing Commission's commentary provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." *Id.* cmt.3.

In its sentencing memorandum, the government set forth the following regarding § 5K1.1:

> Also pursuant to the plea agreement, the government agreed to decide whether to file a motion for departure or reduction of sentence pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). The government has considered this issue at length. Although the defendant participated in proffer meetings and provided useful information about several codefendants, following the defendant's guilty plea he engaged in conduct inconsistent with cooperation, which significantly undermined his ability to provide substantial assistance to the government. Based on the factors set forth in U.S.S.G. § 5K1.1, the government does not believe that the defendant provided substantial assistance warranting a downward departure. As such, the government is not filing a motion pursuant to § 5K1.1.

See Gov't Sentencing Memo, *United States v. Mayfield*, No. 1:18-cr-167-1 (W.D. Mich.) (ECF No. 1129, PageID.9724).

At sentencing, attorney Graham recognized that the government's "good faith analysis led it to believe that it was not appropriate" to file a motion under § 5K1.1. *See* Sentencing Tr., *id.* (ECF No. 1222, PageID.11494). Attorney Graham, however, noted that decision was based on Defendant showing loyalty to his family, and that Defendant "quite quickly remedied that." *Id.* After Defendant made a statement, the Court asked the government to "flesh out the record" regarding its decision to not file a § 5K1.1 motion. In response, the government noted that immediately after his change of plea hearing, Defendant "wrote a letter to the Court saying that the factual basis was all a lie, and that included statements about his sister, about his daughter, about family members." *Id.* (ECF No. 1222, PageID.11498). The government noted that after the Court held the hearing regarding Defendant's letter, Defendant continued to demonstrate loyalty to his family. *Id.* The government cited "recorded jail calls [where] it became clear that the government was unsure whether it could trust [D]efendant not to stay on its side if he actually testified at trial." *Id.* For example, the government had evidence that Defendant had made a trip to Detroit with his sister, but Defendant stated in one recorded call that the trip never happened. *Id.* The government noted that because it lost confidence "that it could trust the defendant on the stand

to testify truthfully," it "could not use the defendant" at trial. *Id.* (ECF No. 1222, PageID.11499). The government concluded its argument by stating:

> It is hard to say whether the defendant's plea and initial proffer helped or hurt the government, because I think some people probably did come in and plead guilty because the defendant was cooperating. At the same time, I think some people went to trial, perhaps are still going to trial, because of the defendant's kind of failure to fulfill his cooperation agreement. So I think it cuts both ways for the defendant. I do think some people did react and plead guilty because they knew Mayfield was cooperating—Mr. Mayfield was cooperating, but at the same time, we still have a trial left of his sister and then Ryan Brown, his daughter's significant other, went to trial. So for these reasons, the government did not feel that a 5K was appropriate, but did honor the dismissal of the 851.

*Id.* In response, attorney Graham clarified that the defense was in no way alleging that the government did not evaluate "in good faith." *Id.* (ECF No. 1222, PageID.11499–11500).

Prior to imposing sentence, the Court noted that Defendant's "activities in terms of the jail calls that have been described obviously denigrated his ability to get a 5K motion from the government." *Id.* (ECF No. 1222, PageID.11504). The foregoing record makes clear that Defendant has only himself and his actions to blame for the government's determination that filing a § 5K1.1 motion was not warranted. Any objection by attorney Graham was entirely immaterial to the government's decision and had no impact on Defendant's sentence. Accordingly, for the reasons set forth above, Defendant is not entitled to relief with respect to ground V.

In sum, Defendant has failed to demonstrate that counsel rendered ineffective assistance in the ways he argues. Defendant, therefore, is not entitled to relief on his § 2255 motion. Furthermore, because the record conclusively establishes that Defendant is not entitled to relief, there is no need for the Court to conduct an evidentiary hearing.

## III.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## IV.    Conclusion

For the foregoing reasons, the Court will deny Defendant's § 2255 motion. Accordingly,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).


Dated:   December 4, 2024                    /s/ Paul L. Maloney
                                             Paul L. Maloney
                                             United States District Judge